**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**METALAB–LABCRAFT, DIVISION OF
METALAB EQUIPMENT COM-
PANY, Respondent.**

**No. 9887.**

United States Court of Appeals
Fourth Circuit.

Argued July 2, 1965.

Decided Oct. 6, 1966.

Melvin Pollack, Atty., N. L. R. B.,
(Arnold Ordman, Gen. Counsel, Dominick
L. Manoli, Associate Gen. Counsel, Mar-
cel Mallet-Prevost, Asst. Gen. Counsel,
and Allen M. Hutter, Atty., N. L. R. B.,
on the brief), for petitioner.

Bertrand B. Pogrebin, Mineloa, N. Y.
(Harry H. Rains, Mineola, N. Y., on the
brief), for respondent.

Before BOREMAN, ALBERT V.
BRYAN and J. SPENCER BELL, Cir-
cuit Judges.

BOREMAN, Circuit Judge.

This case is here on the petition of the
National Labor Relations Board for en-
forcement of its order directing the re-
spondent, Metalab-Labcraft, Division of
Metalab Equipment Company (herein-
after "Metalab"), to cease and desist

from committing certain unfair labor labor practices and to post appropriate notices in the plant for a period of sixty days. Metalab has, by stipulation, waived all defenses to the Board's findings of unfair labor practices.

 The sole issue is whether the remedy fashioned by the Board will, under the particular circumstances here, effectuate the policies of the National Labor Relations Act. If the order does not serve to promote and effectuate those policies enforcement should be denied. NLRB v. Kostrencich, 296 F.2d 561 (9 Cir. 1961) (per curiam); NLRB v. American Dredging Co., 276 F.2d 286 (3 Cir. 1960), cert. denied, 366 U.S. 908, 81 S.Ct. 1082, 6 L.Ed.2d 234 (1961). However, under the circumstances here we think the order should be enforced.

The unfair labor practices occurred during an organizational campaign waged in the fall of 1963 by District 50, United Mine Workers of America (hereinafter "District 50"), in an effort to supplant an incumbent union, the United Brotherhood of Carpenters and Joiners of America, Local 2689, AFL–CIO (hereinafter "Carpenters"), as bargaining agent for Metalab's production and maintenance employees. Metalab clearly was opposed to such a substitution of bargaining representatives. The Labor Act violations, consisting of discrimination in regard to work assignments and threats of reprisal, were designed to discourage membership in District 50. Metalab insists that enforcement of the Board's order will not further the policies of the Act for the reason that, despite the unfair labor practices, Carpenters won a representation election conducted on January 24, 1964, and was certified by the Board as the exclusive bargaining agent on May 22, 1964.[1] Carpenters has negotiated a collective bargaining contract with Metalab which will not expire until September 1, 1967.

 From the Board's certification of Carpenters it seems clear that the unfair

labor practices did not interfere with the employees' right to freely choose their bargaining representative, but we cannot agree with Metalab's contention that thereby the question of enforcement of the Board's order was rendered "moot." In General Engineering, Inc. v. NLRB, 311 F.2d 570 (9 Cir. 1962), an election had been conducted to determine which of two competing unions should represent the employees and both unions were rejected by the voting employees. Charges of employer pre-election unfair labor practices were upheld and an order was entered by the Board directing a "rerun" election and ordering the company to cease and desist from engaging in such unfair labor practices. Again, at the second election, neither union was selected and the Board so certified. Compliance with the Board's previous order was resisted and, in enforcement proceeding, enforcement was denied on the ground that the Board's certificate made "moot" certain portions of the order which related to the representation case since the second election was conducted free of restraint, coercion, threatened reprisals or employer interference. Cited, infra, are two cases in which enforcement of Board orders was granted and which we think are more persuasive in the circumstances.

The ready answer to the charge of mootness is that District 50 may again campaign for selection as the bargaining agent of the employees at some permissible future date and enforcement of the Board's order may serve to prevent a repetition of Metalab's unlawful conduct. This line of reasoning has prompted two other circuits, in cases posing enforcement questions quite similar to the question presented on this appeal, to grant enforcement of Board orders with respect to pre-election unfair labor practice conduct by an employer. NLRB v. Marsh Supermarkets, Inc., 327 F.2d 109 (7 Cir. 1963), cert. denied, 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964); NLRB v.

---

1. The Trial Examiner's decision finding Metalab guilty of unfair labor practices toward District 50 was issued on May 28, 1964, and affirmed by the Board on August 31, 1964.

Clark Bros. Co., 163 F.2d 373 (2 Cir. 1947).

Metalab argues that enforcement of the remedial order will be disruptive of collective bargaining between it and Carpenters and thus will not promote the industrial harmony which the Labor Act is designed to achieve. However, Metalab's attempts to offer a reasonable basis for such a conclusion leave us unpersuaded. Metalab centers its primary attack upon that portion of the order which directs the posting of notices in the plant rather than upon the command to cease and desist. The required notices appear rather routine and innocuous. In essence, they would inform the employees that Metalab will not discourage or interfere with their right to join or assist District 50 or *any other union*. Metalab speculates that the purpose of these notices may not be fully understood by the employees and that the notices will only serve to fan the flames of pro-District 50 sentiment which may exist in certain segments of its work force. It suggests, in rather veiled fashion that this will result in pressure on the certified agent to take more extreme or unreasonable bargaining positions than it otherwise would and thus hamper settlement of plant disputes through bargaining procedures.

██ Carpenters is, by reason of the provisions of the Act, the *only* bargaining agent of the employees; it represents all of the employees, not just those who favored it at the ballot box, and should endeavor to respond as fully as possible to the wishes of all whom it represents. The fact that pressure may be exerted upon the exclusive bargaining agent by individual employees or groups of employees in an effort to shape the bargaining positions taken by the agent is not dispositive of the question before us. The remote possibility that posting of notices for a period of sixty days as directed may cause the "specter" of District 50 to loom somewhat larger over the bargaining table than would otherwise be the case would not, in our opinion, warrant a denial of enforcement.

Enforcement granted.